# Chapman, Appellant, *v.* Faith.

*Mechanic's lien—Contractors—Acts of June* 16, 1836, *P. L.* 695, *and April* 16, 1845, *P. L.* 538.

The Act of April 16, 1845, P. L. 538, extended the provisions of the Act of June 16, 1836, P. L. 695, relating to mechanics' liens to contractors and changed the law as it had been declared in Hoatz v. Patterson, 5 W. & S. 537, and Haley v. Prosser, 8 W. & S. 133, in which cases it had been declared that one who by special contract undertakes to furnish all the materials and erect a building for a certain sum was not within the purview of the mechanic's lien law, and was entitled to file no lien. No change whatever was made in the provisions of the act of 1836, relative to what must be set forth in the claim.

*Mechanics' liens—Contractors—Subcontractors—Itemized account.*

Under section 12 of the act of June 16, 1836, work done and materials furnished under a special contract with the owner for a stipulated sum need not be itemized in the claim. Each party has knowledge of the claim under it, and the reason for furnishing particulars does not exist. A subcontractor, however, must specify the items of his claims for work or material, and a lumping charge for either does not satisfy the requirements of the statute and should be stricken out on motion.

Where an owner employs a firm of architects as their agent " to supervise the work of the contractor and subcontractor " and " to approve the estimates and contracts made by the contractors and subcontractors," a subcontractor for all the bricks of the building, whose offer to the contractor and acceptance of the same by the contractor, was approved by the owners, need not set out in his claim for a mechanic's lien an itemized account of the brick furnished, and of the specific date of each delivery. Brown v. Kolb, 8 Pa. Superior Ct. 413, followed.

Argued Oct. 8, 1901. Appeal, No. 263, Oct. T., 1900, by plaintiffs, from order of C. P. No. 4, Phila. Co., Dec. T., 1898, No. 391, M. L. D., striking off mechanic's lien in case of William R. Chapman, John B. Chapman and William R. Chap-

man., Jr., Copartners, trading as William R. Chapman & Sons, v. Samuel Faith and John Long, Copartners, trading as S. Faith & Company, Owners or Reputed Owners, and George W. Stewart, Contractors.   Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and W. D. PORTER, JJ.   Reversed.

Demurrer to claim for mechanic's lien.

From the record it appeared that George W. Stewart had entered into a contract with S. Faith & Company for the erection and construction of a factory and warehouse.   The plaintiffs were subcontractors for the brick and terra cotta work. The contractor failed to pay the plaintiffs the whole of their bill, and the latter filed a lien against the building.   The material portions of the claim are as follows:

The said George W. Stewart requested the said William R. Chapman & Sons to furnish all the brick and terra cotta work and to do all the bricklaying and terra cotta work in and about the erection and construction of the said factory in accordance with plans and specifications in the possession of Hales & Ballinger, who were the architects and agents for the said S. Faith & Company, the owners or reputed owners of the said factory, warehouse and lot of ground, employed by the said S. Faith & Company to supervise the work of the contractor and subcontractors for the erection of the said factory and warehouse, and to approve the estimates and contracts made by the said contractor and subcontractors.   The said William R. Chapman & Sons at the request of the said George W. Stewart, examined the said plans and specifications, and thereupon proposed to the said George W. Stewart to do all the brick and terra cotta work and to provide all the materials therefor necessary to fully complete the said factory and warehouse in accordance with the said plans and specifications, for the sum of $3,495.   The said George W. Stewart thereupon accepted the said proposition of the said William R. Chapman & Sons in writing, a copy of which acceptance is hereto annexed, dated November 23, 1897, marked Exhibit "A," and is hereby made a part of this claim.   The said S. Faith & Company were fully cognizant of the offer thus made by William R. Chapman & Sons before it was accepted by George W. Stewart, and they approved of the said offer and the acceptance

of the same.   The said William R. Chapman & Sons thereupon furnished all the brick and terra cotta and did all the necessary work and labor in and· about the laying of the said brick and terra cotta necessary to fully complete the factory and warehouse above mentioned.   In furnishing said materials and doing said work, they provided and furnished 15,000 Pompeian bricks, 15,000 stretchers, and 170,000 hard bricks.   They also furnished all the terra cotta in accordance with the plans and specifications above mentioned and now on the said factory and warehouse.   They also furnished flue lining and other materials such as lime, sand, mortar, etc., necessary to lay the said brick and terra cotta work; and they also furnished the necessary bricklayers and laborers required to lay the said brick and terra cotta work; the time required in the laying of the said brick and terra cotta work being 1,470 hours.   Plans and specifications hereinabove referred to are in possession of the said S. Faith & Company, and claimants have not a copy of the same.   The proposition or offer made by claimants to do the said work and furnish the said materials for the sum of $3,495 is also in possession of the said S. Faith & Company or of the said George W. Stewart, the contractor, and claimants have not a copy of it.   Claimants aver that they furnished all the materials and did all the work in accordance with the said plans and specifications, and in all other respects complied with the acceptance of their proposition as set forth in the written acceptance of George W. Stewart, hereto annexed, and in addition to so doing they performed certain extra work, approved by Hales & Ballenger, the architects, in the laying of brick and terra cotta, amounting to $7.25.   The claimants have received from the said George W. Stewart, on account of the sum due to them as aforesaid, the sum of $2,600, leaving a balance of $902.25 still due to them, for which this claim is filed.

The said bricks, terra cotta, mortar and other materials were furnished by the claimants and the said work, to wit: bricklaying and terra cotta laying was done by the claimants continuously within six months last past, to wit: between December 15, 1897, and June 15, 1898, both inclusive, and the said materials were furnished and the work and labor done in and about the erection and construction of said factory and warehouse and on

the credit of the same at the special instance and request of the said George W. Stewart, he being the contractor for the erection and construction of said factory and warehouse, and the said S. Faith & Company being the owners or reputed owners of the same. And the said Wm. R. Chapman & Sons claim to have a lien against the premises hereinabove described for the said sum of $902.25 from the commencement of said building known as a factory and warehouse, according to the act of assembly in such cases made and provided.

The owners filed a demurrer to the claim as follows:

1. That the said claim is defective on its face and does not entitle the plaintiffs to maintain the same as a lien against defendants' property.

2. The said claim is defective, in that it does not set forth in detail, either in the body thereof or by an attached itemized bill of particulars, the nature and kind of work done, the kind and amount of material furnished, the time when the same was done or furnished, and the cost of each item of material supplied, and of each item of work done.

3. It is further defective in this, that it does not set forth specially the amount due respectively for work done and materials furnished, but only gives the balance of an aggregate sum therefor which the plaintiffs claim to be due to them, and gives the defendants, as the owners of the said building, no information by the claim filed as to the particulars thereof, so that they may make the necessary inquiries to satisfy themselves of its justice as a lien on their property.

4. It fails to give the items of payments making the credit which plaintiffs allow on the lien of $2,600. Plaintiffs content themselves with merely giving a general credit for the said sum as moneys received by them, leaving the balance due of $902.25, for which they file their lien.

The court without filing an opinion sustained the demurrer and struck off the lien.

*Errors assigned* were (1) in sustaining the demurrer; (2) in striking off the lien.

*Peter Boyd*, for appellant.—Where the contract is with the owner the claim need not set out the items of work and mate-

rial. Was not the contract in this case in effect made with the owner ? It was not accepted until he approved and ratified it: Young v. Lyman, 9 Pa. 449; Haines v. Burr, 1 Phila. 52; Shields v. Garrett, 12 Phila. 458.

· If the claim set forth the dates between which the work was done or materials furnished as a claim "for painting done in and about the erection of a house and the necessary materials provided therefor from the 1st of April, 1842, to the 1st of October, 1842, and within six months last past," it is sufficient: Richabaugh v. Dugan, 7 Pa. 395; Bayer v. Reeside, 14 Pa. 167.

*George P. Rich*, of *Rich & Boyer*, for appellees.—The mechanic's lien law of 1836 imperatively requires that every claim filed, must set forth the nature or kind of the work done, the kind and amount of materials furnished, and the time when the materials were furnished or the work was done, as the case may be. Nothing is better settled than that a claim filed by a subcontractor, in which he seeks to charge the owner of a building for work and labor done and materials furnished, on a contract made with a contractor, not the owner, is incurably defective, which fails to give the owner full and precise information both as to the specific items of work done and materials furnished, as well as how much of the sum claimed was due for work and how much was due for materials: Russell v. Bell, 44 Pa. 47; Lee v. Burk, 66 Pa. 336; Gray v. Dick, 97 Pa. 143; Brown v. Myers et al., 145 Pa. 17; McFarland v. Schultz, 168 Pa. 634; Wharton v. Real Estate Investment Co., 180 Pa. 168; Lee v. Exeter Club, 9 Pa. Superior Ct. 581.

The lien of a mechanic or materialman is not of common right. It is a creature of the statute, not unlimited, not of course, but given only to those who comply with the prescribed terms: Russell v. Bell, 44 Pa. 53; Wharton v. Real Estate · Investment Co., 180 Pa. 168.

The mechanic's lien law recognizes two distinct classes of liens, to wit:

1. Those arising under the act of June 16, 1836, out of a contract made directly with the owner.

2. Those arising under the supplemental act of April 16, 1845, out of a contract made with a contractor with the owner.

It is the duty of the claimant when he comes to file his lien

to determine in what class the lien belongs, and file it accordingly, showing on the face of the record the facts which justify its being placed in the class in which he has elected to put it. And where it is filed in one class, while the facts put it in the other, as arising under a different act of assembly, it is incurably defective: Morrison v. Henderson, 126 Pa. 216; Wharton v. Real Estate Investment Co., 180 Pa. 175; Warren v. Freeman, 187 Pa. 460.

OPINION BY RICE, P. J., January 21, 1902:

In the case of Hoatz v. Patterson, 5 W. & S. 537, decided in 1843, followed by Haley v. Prosser, 8 W. & S. 133, decided in 1844, the Supreme Court held, that the mechanic's lien law of 1836, did not authorize the filing of a lien by one who by special contract undertakes to furnish all the materials and erect a house or other building for a certain sum. To meet these decisions, the legislature declared in the 5th section of the Act of April 16, 1845, P. L. 538, that the " provisions," evidently referring to all the provisions, of the act of 1836, " according to the true intent and meaning thereof, extend to and embrace claims for labor done and materials furnished and used in erecting any house or other building which may have been or shall be erected under, or in pursuance of any contract or agreement for the erection of the same, and the provisions of said act shall be so construed." Nothing can be clearer than that the only change of the law made by the act of 1845, was to extend the right to file liens to contractors. Upon this subject Mr. Justice STRONG said: " The act does not undertake to change either the form or the substance of the claim filed, or to relieve the claimant from the conditions which the act of 1836 made essential to the validity of his claim. It was passed to change the law as declared in Hoatz v. Patterson and Haley v. Prosser in which cases it had been ruled that one who, by special contract, undertakes to do the work or furnish the materials of a building, was not within the purview of the mechanic's lien law, and was entitled to file no claim. It had no other object: " Russell v. Bell, 44 Pa. 47. We repeat upon the authority of that case, if the citation of a decided case is needed for so plain a proposition, that no change whatever was made in the provisions of the act of 1836,

relative to what must be set forth in the claim. One of those provisions is that every claim must set forth: " Second. The amount or sum claimed to be due, and the nature or kind of the work done, or the kind and amount of materials furnished, and the time when the materials were furnished, or the work was done as the case may be: " Section 12. But while this section applies as well to claims filed by contractors as to claims filed by subcontractors and material men, the cases decide, and for good reasons, that what is a substantial and sufficient compliance with its requirements by the former is not by the latter. In the former class of cases it has been held, that work done and materials furnished under a special contract with the owner for a stipulated sum need not be itemized in the claim. Each party has knowledge of the claim under it, and the reason for furnishing particulars does not exist. " A mechanic who makes such a contract and completes it, seldom keeps an account of every portion of the materials he uses or the work he does; nor is there any occasion for it. He is to complete the house according to his contract, and he is to be paid a stipulated sum. In this case it is of no consequence either to the owner or the public, that he should state the number of cubic yards dug for the cellar, the number of perches of stone built, or the number of boards used. He states what is equally useful under the words of the act, his contract: " Young v. Lyman, 9 Pa. 449. So in Lee v. Burk, 66 Pa. 336. Mr. Justice SHARSWOOD said: " The reason for requiring these particulars to be furnished does not exist in the case of a special contract for a round sum of money. Cessante ratione cessat et ipsa lex."

The ruling in Young v. Lyman, has been followed in all subsequent cases of the same class, and has been distinctly recognized in many other cases in which the general question was under consideration. In a very recent case, Mr. Justice MITCHELL said: " So in the present case if Norton was in fact the owner, his contract with plaintiff for a lump sum was valid and would sustain the lien. The plaintiff should be allowed to so amend his claim of record as to enable him to prove the facts, if they are as he avers: " Bohem v. Seel, 185 Pa. 382.

On the other hand it has been repeatedly held, " that a subcontractor must specify the items of his claim for work or materials, and that a lumping charge for either does not sat-

isfy the requirements of the statute and should be stricken out on motion : " McFarland v. Schultz, 168 Pa. 634.   The other cases cited by the appellee's counsel in support of this rule are : Russell v. Bell, 44 Pa. 47 ; Lee v. Burk, 66 Pa. 336 ; Gray v. Dick, 97 Pa. 143 ; Brown v. Myers et al., 145 Pa. 17 ; Wharton v. Real Estate Investment Company, 180 Pa. 168 ; Lee v. Exeter Club, 9 Pa. Superior Ct. 581 ; to which should be added, Shields v. Garrett, 5 W. N. C. 120.   In determining whether the rule as stated in these cases is applicable and controlling in the present case, it is important to bear in mind the reasons given for the rule.   For it is to be noticed that the Supreme Court has not based the distinction between a claim filed by the contractor and a claim filed by the subcontractor, on the mere words of the statute, and could not do so.   It has gone upon the theory that there is a distinction growing out of the differing relations of the two kinds of claimants to the owner, which may be recognized by the courts in determining whether the claim gives the information to him and the public that the statute intended it to give.   If the true theory is, that the words of the statute leave it permissible to recognize such distinction, then the two classes of cases are not in conflict, but in each the statute is enforced according to its true spirit and intent.   If, however, that is not the true theory, it is difficult to see upon what principle the ruling in Young v. Lyman and the cases which follow in its lead can be sustained.   The pertinency of these preliminary observations will appear after the facts are stated.

The claimants aver that they agreed to furnish all the brick and terra cotta necessary to fully complete the building for the sum of $3,495, according to the plans, specifications and detailed drawings (now in the possession of the owners) prepared by the architects employed by the owners, and to the entire satisfaction of the architects ; that they furnished all the brick and terra cotta, and did all the necessary work to fully complete the building ; that they furnished 15,000 Pompeian bricks, 15,000 stretches, 175,000 hard bricks ; that they furnished all the terra cotta in accordance with the plans and specifications above mentioned, also flue lining and other materials such as lime, sand, mortar, etc., necessary to lay the brick and terra cotta work ; also, that they furnished necessary bricklayers and laborers required to lay the brick and terra cotta work, the time

required in the laying of said brick and terra cotta work being 1,470 hours. They further aver that the materials were furnished and the work was done " continuously within six months last past, to wit: between December 15, 1897, and June 15, 1898, both inclusive," and that after deducting the payments made by the contractor, the balance due them was $902.25. We do not think it can be said that this claim wholly fails to set forth the " nature of the kind of work done or the kind and amount of materials furnished." Not only are they for the most part specified in the claim, but it is expressly averred that they were the nature or kind of work and the kind and amount of materials called for in the plans, specifications and drawings which were at the outset, and still are, in the possession of the owners of the building. But it must be conceded that, if the rule enunciated in the cases last cited applies, the claim is defective in that it does not set forth the cost of each item of material supplied and of each item of work done. Does the rule apply? The facts which distinguish this case from those cited are set forth in the claim. The owners employed a firm of architects as their agent " to supervise the work of the contractor and subcontractors " and " to approve the estimates and contracts made by the said contractor and subcontractors." At the request of the contractor, the claimants examined the plans and specifications in the possession of the architects, and thereupon made an offer to furnish all the brick and terra cotta and to do all the bricklaying and terra cotta work, " in accordance with the plans and specifications in the possession of the architects." This offer was accepted, and the contract on the part of the claimants performed. The fair inference is, that in their contract with Stewart, the principal contractor, the owners reserved the right to approve or disapprove the contracts made with others. If that was not the case, how could they appoint architects their agents " to approve the estimates and contracts ? " But be that as it may, they assumed to exercise that right, and in this particular case the claimants' offer was made known to them before it was accepted, " and they approved of the offer and the acceptance of the same." Of course they did not thereby engage to become the paymasters, but having interjected themselves into the transaction between the claimants and the contractor, as doubtless they had a right to do, and having ap-

proved the contract, it seems to us that the claimants had a right to assume that the terms of the contract would not be questioned by the owners after the former had performed their part in good faith.   This was plainly the meaning which they must have intended the claimants to ascribe to their act of approval.   Such being the case the latter would naturally and properly suppose that it would not be necessary for them to keep an itemized account of the cost of every load of brick and of every piece of terra cotta furnished, and to set forth in their claim the specific date when each was furnished.   The reasons given in the cases for requiring the claim to be itemized when the claimant is a subcontractor between whom and the owner no privity exists, are that the agreement between him and the contractor is not the measure of the owner's responsibility; such a contract is not evidence of the sum which the owner ought to pay, nor of the amount of the claimants' lien upon the building; of the nature and amount of his claim, the kind of work which he has done upon the building, the kind and amount of the materials which he has furnished, as well as the time when the credit arose, it is presumable the owner knows nothing because they have not dealt with each other; notwithstanding the subcontract, the owner is as much interested as he would be, had it not been made, in knowing the kind of work and materials with the amount of each which the subcontractor has furnished; for these reasons, it is of the highest importance that the owner should be informed by the claim filed as to the particulars of the demand, that he may be enabled to make the necessary inquiries to satisfy himself of its justice as a lien upon his property.   None of the foregoing reasons can be successfully urged in the present case for requiring greater particularity than has been observed in the claim filed.   The owners had all the knowledge of the particulars of the demand which they would have had if the contract had been made directly with them, and if the lien is held good their building will be charged with the precise sum less payments, and that sum only, which they approved as a proper compensation for the work to be done and the materials to be furnished.   If the case is not within the strict letter of the decision in Young v. Lyman, it is as clearly within the principle decided as was that case.   This conclusion is in harmony with our decision in Brown v. Kolb, 8 Pa. Superior Ct. 413, a

case closely resembling the present, and after a careful reconsideration of the question we see no reason for holding differently. See also McCune v. Hatch, a case decided by us in December last.

The judgment is reversed, the lien is reinstated and the demurrer overruled, with leave to the defendants to plead to the scire facias.